UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

KENNETH HALLEY                                          CIVIL ACTION

VERSUS                                                  NO. 20-2533

JASON KENT                                              SECTION "M"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1]  For the following reasons, I recommend that the petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.      FACTUAL BACKGROUND

Petitioner Kenneth Halley is a convicted inmate incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2]  Halley and co-defendant John Chambers were charged by a bill of indictment in Orleans Parish with second degree murder of Joseph Lucien.[3]  Halley and Chambers pled not guilty on December 6, 2013, and September 13, 2013, respectively.[4]  The Louisiana Fourth Circuit Court of Appeal summarized the established facts at trial as follows:

---

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (id. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  *Id.* § 2254(e)(2)(B).

[2] ECF No. 5, at 1, 8.

[3] State Record Volume (hereinafter "St. R. Vol.") 2 of 7, Bill of Indictment, 8/29/13.

[4] St. R. Vol. 1 of 7, Min. Entry, 12/6/13 (Halley); *id.*, Min. Entry, 9/18/13 (Chambers).

On the morning of April 5, 2005, Detective Ernest Rome of the New Orleans Police Department responded to a report of a homicide on the 2300 block of Alabo Street. When he arrived on the scene, Det. Rome observed the victim, with apparent gunshot wounds, lying in an alley next to a house. EMS arrived a short time later, and medical personnel pronounced the victim dead at the scene. The victim was later identified as Joseph Lucien.

Detective Rome and other responding officers cordoned off the crime scene and canvassed the area for witnesses and evidence useful to the investigation. No witnesses were forthcoming. Later that day, two witnesses—R.R. and E.M.— arrived at the police station and met with Det. Rome. As a result of the statements given by R.R. and E.M. and an identification made by them, Det. Rome obtained arrest warrants for both Kenneth Halley and John Chambers. The defendants were arrested the day after the shooting, but no charges were filed at that time because pertinent witnesses refused to testify.

According to the trial testimony of an Assistant District Attorney, his office reviewed the case again in 2013. After further investigation, the case was presented to a grand jury, which returned an indictment against both Mr. Halley and Mr. Chambers in August of 2013. The case proceeded to trial in December of 2015.[5]

Halley and Chambers went to trial before a jury on December 7 through 9, 2015, and the jury found both Halley and Chambers guilty as charged.[6] Halley filed motions for a new trial and for post-verdict judgment of acquittal.[7] On January 15, 2016, the state trial court denied Halley's motions.[8] After Halley waived legal delays, the court sentenced him to life imprisonment without the benefit of parole, probation or suspension of sentence.[9]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Halley's appointed counsel asserted that the State violated Halley's right of confrontation when it used statements allegedly made by Chambers that implicated both of them.[10] On February 8, 2017, the Louisiana

---

[5] *State v. Halley*, 212 So. 3d 596, 598-99 (La. App. 4th Cir. 2017) (footnote omitted); St. R. Vol. 4 of 7, Louisiana Fourth Circuit Court of Appeal Opinion, 2016-KA-0713, at 2, February 8, 2017.

[6] St. R. Vol. 1 of 7, Trial Mins. (1 pages), 12/7/15; *id.*, Trial Mins. (2 pages), 12/8/15; *id.*, Trial Mins. (2 pages), 12/9/15; St. R. Vol. 3 of 7, Trial Tr., 12/8/15; St. R. Vol. 4 of 7, Trial Tr., 12/9/15.

[7] St. R. Vol. 2 of 7, at 66, Motion for New Trial, 1/8/16; *id*., at 67, Motion for Post-Verdict Judgment of Acquittal, 1/8/16.

[8] St. R. Vol. 1 of 7, Sentencing Mins., 1/15/16.

[9] *Id.*; St. R. Vol. 4 of 7, Sentencing Tr., at 10, 1/15/16.

[10] St. R. Vol. 4 of 7, Appeal Brief, 2016-KA-0713, at 2, 8/17/16.

Fourth Circuit affirmed Halley's conviction and sentence.[11]  The court found that Halley did not object to the admissibility of Chambers' statement before or at the time the testimony was elicited, and, even had the issue been reserved for appellate review, the statement was nontestimonial and the error was harmless.[12]  Without stated reasons, on October 27, 2017, the Louisiana Supreme Court denied the pro se writ application filed by Halley.[13]  Halley did not file an application for writ of certiorari with the United States Supreme Court within ninety (90) days, thus, his conviction and sentence became final on January 25, 2018.[14]

On August 1, 2018, Halley filed an application for post-conviction relief asserting he was denied effective assistance of counsel when his counsel failed to (1) object to the admission of Ryan Roger's audio recording and written transcript of the statement; (2) object to the admission of hearsay statements made by his co-defendant; (3) object when the trial judge entered the jury room on two occasions during jury deliberations; and (4) object when the trial judge threatened witnesses in chambers.[15]  The state trial court denied the application on November 16, 2018, finding that the application was without merit.[16]  The court found that a proper foundation had been laid to admit Roger's statement and, therefore, any objection would have been overruled.[17] It similarly found that any objection to the statement Chambers made to Adrian McDaniel would have been overruled and that ruling would have been affirmed on appeal.[18]  The trial court found that Halley failed to show how his counsel's failure to object to the trial judge speaking to the

---

[11] *State v. Halley*, 212 So. 3d 1224 (La. App. 4th Cir. 2017); St. R. Vol. 4 of 7, 4th Cir. Opinion, 2016-KA-0713, at 11, 2/8/17.

[12] *Id*. at 599-603; St. R. Vol. 4 of 7, 4th Cir. Opinion, 2016-KA-0713, at 3-11, 2/8/17.

[13] *State v. Halley*, 288 So. 3d 1228 (La. 2017); St. R. Vol. 4 of 7, La. Sup. Ct. Order, 2017-K-0421, 10/27/17.

[14] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); Sᴜᴘ. Cᴛ. R. 13(1).

[15] St. R. Vol. 1 of 7, Application for Post-Conviction Relief, 8/7/18 (dated 8/1/18).

[16] St. R. Vol. 1 of 7, Judgment at 1, 11/16/18.

[17] *Id.* at 2.

[18] *Id*.

jurors outside counsel's presence was unreasonable or caused him prejudice.[19]  Finally, the trial court found that it was protecting Halley's right to a fair trial when it instructed witnesses not to refer to a pending manslaughter charge against Halley and Chambers, and that Halley failed to show prejudice as a result of his counsel's failure to object.[20]

On January 16, 2019, the Louisiana Fourth Circuit denied Halley's related writ application.[21]  The Louisiana Supreme Court denied Halley's related writ application on October 8, 2019, finding that he failed to show that he received ineffective assistance of counsel.[22]

## II.    **FEDERAL HABEAS PETITION**

On August 28, 2020, Halley filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenging his current custody.[23]  Halley asserts the following claims before the court:

(1)    The admission of a statement by his co-defendant during a joint trial violated his right to confrontation; and

(2)    Ineffective assistance of counsel.[24]

The State's response in opposition does not seek to time bar Halley's petition[25] and concedes that Halley's claims are exhausted.[26]  The State asserts that Halley's claims are meritless and the denial

---

[19] *Id.*

[20] *Id.*

[21] St. R. Vol. 5 of 7, 4th Cir. Order, 2019-K-0005, 1/16/19; *id.*, 4th Cir. Writ Application, 2019-K-0005, 1/2/19 (dated 12/28/18).

[22] *State v. Halley*, 280 So. 3d 143 (La. 2019); St. R. Vol. 6 of 7, La. Sup. Ct. Order, 2019-KH-00306, 10/8/19; *id.,* La. Sup. Ct. Writ Application, 19 KH 306, 2/22/19 (dated 1/31/19).

[23] ECF No. 5.  Halley's original, deficient petition was received and filed by the Clerk of Court on September 14, 2020.  The pleading was dated August 28, 2020.  ECF No. 5, at 7; ECF No. 1, at 7.  The fact that he later paid the filing fee does not alter application of the federal mailbox rule.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

[24] ECF No. 5, at 3-5.

[25] ECF No. 23, at 7-9.

[26] *Id.* at 10.

of relief was not contrary to or an unreasonable application of Supreme Court law.[27]  Halley did not file a reply to the State's opposition.

## III.   **GENERAL STANDARDS OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996,[28] and it applies to habeas petitions filed after that date.[29]  The AEDPA therefore applies to Halley's petition filed on August 28, 2020.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court.  In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[30]  The State does not seek to time bar Halley's federal habeas petition, concedes that state court review has been exhausted, and concedes that no claim is in procedural default.[31]  This federal habeas court is thus not barred from reviewing Halley's claims.

Nevertheless, for the reasons that follow, Halley is not entitled to federal habeas relief.

---

[27] *Id*. at 11-24.  On April 16, 2021, Halley filed a second application for post-conviction relief raising a claim that his conviction by a nonunanimous verdict violates his constitutional rights under *Ramos v. Louisiana*, 590 U.S. ----, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020).  St. R. Vol. 1 of 7, Application for Post-Conviction Relief, 4/16/21.  Thereafter, the Supreme Court held that *Ramos* does not apply retroactively to cases on federal collateral review.  *Edwards v. Vannoy*, 141 S. Ct. 1547, 1554-55, 209 L. Ed. 2d 651 (2021).

[28] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[29] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[30] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[31] ECF No. 23, at 7-10.

A.  **Standards of a Merits Review**

Sections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[32] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[33]  The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).  The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[34]  The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[35]

---

[32] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

[33] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

[34] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

[35] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry*, 532 U.S. at 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[36] "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[37]

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[38] Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[39] The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[40]

## B.  AEDPA Standards of Review Apply in this Case

As discussed above, the AEDPA's deferential standards of review under § 2254(d) and *Williams*[41] apply only to claims adjudicated on the merits by the state courts.  28 U.S.C. § 2254(d). Thus, the deferential AEDPA standards of review do not apply to claims that are not adjudicated

---

[36] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[37] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

[38] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

[39] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[40] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

[41] 529 U.S. at 362.

on the merits in state court.[42]  In that instance, the federal habeas court will consider the claims (not addressed on the merits) under pre-AEDPA *de novo* standards of review.[43]

To determine whether to apply the highly deferential AEDPA standards, a federal habeas court must look to the last reasoned state court decision to determine whether that ruling was on the merits of the claim and "lack[ed] in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[44]  In well-settled Supreme Court doctrine, when faced with an unexplained state court decision, the federal habeas court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision.[45]

## IV. **HALLEY'S SPECIFIC CLAIMS**

### A. **Claim One: Violation of his Right to Confrontation**

Halley claims his confrontation rights were violated when Adrian McDaniel testified regarding statements made by Chambers that implicated both Chambers and Halley.  In opposition, the State contends that the statement to McDaniel was not testimonial and therefore not subject to the Confrontation Clause.

The Louisiana Fourth Circuit addressed the issue and stated:

> Turning now to Mr. Halley's sole assignment of error, we first note that a defendant cannot avail himself of an alleged error without having made a contemporaneous objection stating the specific ground of the objection, and he is

---

[42] *Cullen v. Pinholster,* 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).

[43] *Henderson*, 333 F.3d at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims asserted in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

[44] *White*, 572 U.S. at 419-20 (quoting *Harrington*, 562 U.S. at 103).

[45] *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

limited on appeal to that ground articulated at trial. La. C.Cr.P. art. 841(A); *State v. Martello*, 98–2066, p. 5 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192, 1197, citing *State v. Buffington*, 97–2423, p. 9 (La.App. 4 Cir. 2/17/99), 731 So.2d 340, 346, quoting *State v. Chisolm*, 95–2028, p. 6 (La.App. 4 Cir. 3/12/97), 691 So.2d 251, 255. "One purpose of the contemporaneous objection rule is to require counsel to call an error to the judge's attention at a time when the judge can correct the error." *State v. Arvie*, 505 So.2d 44, 47 (La. 1987).

Mr. Halley did not file any motions objecting to the admissibility of Mr. Chambers' statement, nor did he lodge an objection at the time the testimony was elicited. Accordingly, he cannot now complain. Nevertheless, even had the issue been reserved for appellate review, Mr. Halley's assignment of error would be without merit because we find the statement at issue to be "non-testimonial" and harmless.

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings. *See Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965). The confrontation clause of the Louisiana constitution specifically and expressly guarantees each accused the right "to confront and cross-examine the witnesses against him." La. Const. art. 1, § 16.

"The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 5 J. WIGMORE, EVIDENCE § 1395, p. 123 (3d ed.1940)). Cross-examination is the principal means by which believability and truthfulness of testimony are tested. Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit, the witness. *See Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. at 1110; *State ex rel. Nicholas v. State*, 520 So.2d 377, 380 (La. 1988); *State v. Hillard*, 398 So.2d 1057, 1059–1060 (La. 1981).

The United States Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36, 50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), is the starting point for any analysis regarding the admissibility of hearsay testimony in light of the protections afforded defendants by the Sixth Amendment of our Constitution.

"[T]he principal evil at which the Confrontation Clause is directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused [at trial]." *Id.*, p. 50, 124 S.Ct. at 1363. As a result, "[w]here testimonial evidence is at issue... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.*, p. 68, 124 S.Ct. at 1374.

In *State v. Norah*, 2012–1194 (La.App. 4 Cir. 12/11/13), 131 So.3d 172, *writ denied*, 2014–0084 (La. 6/13/14), 140 So.3d 1188, and *writ denied*, 2014–0082 (La. 6/20/14), 141 So.3d 287, this court held that inculpatory statements made by a jointly-tried, non-testifying co-defendant during a jailhouse telephone call to a friend during booking were non-testimonial and did not trigger the Confrontation Clause. In reaching that conclusion, this court reasoned:

> The contours of the Confrontation Clause's relevance in the inclusion or exclusion of certain hearsay statements at trial are defined by the term "witness" in its text. *Id.* at 51, 124 S.Ct. 1354. A "witness" is one who "bears testimony." *Id.* "Testimony" is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (internal punctuation omitted). Thus, a statement must be "testimonial" in nature for the procedural protections set forth in *Crawford* to apply. Whether a statement is "testimonial" has proven to be jurisprudentially enigmatic. The U.S. Supreme Court has abstained from too rigidly defining the parameters of this term, utilizing instead a fluid, situational approach.

*Id.*, p. 18, 131 So.3d at 186.

In *Michigan v. Bryant*, the Court provided a framework to assist lower courts in determining whether a statement qualifies as testimonial. *See* 562 U.S. 344, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). The Court emphasized that "the relevant inquiry is ... the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Id.*, p. 360, 131 S.Ct. at 1156.

To give context to the statement complained of, we offer a further review of the facts presented to the jury.

R.R., one of the witnesses who gave a statement to Det. Rome on the day of the shooting, testified at trial. He testified that he lived in the Lower Ninth Ward on Alabo Street most of his life, and he and the victim were neighborhood friends. R.R. also knew Kenneth Halley and had met John Chambers through Halley. Recounting the day Mr. Lucien was killed, R.R. testified that his girlfriend dropped him off at his grandmother's house on Alabo Street. R.R. could not remember any particulars of the shooting or its aftermath. He said he was testifying at the trial involuntarily and only because he had been subpoenaed and arrested. He acknowledged that he had gone to the police station after the shooting but did not remember telling the police he had been in the 2300 block of Alabo Street at the time of the shooting.

The State played and introduced into evidence a recording of a statement given by R.R. to Detective Rome on the day of the shooting. In that statement, R.R. said he and others were sitting together on a porch in the 2300 block Alabo Street on April 5, 2005 when the victim walked up and told them he had beaten up a man

named Lloyd at Wagner's Market. About ten minutes later, Kenneth Halley, John Chambers, and two other men, M.M. and Lloyd, drove up in a blue Ford Explorer. R.R. said the two-door Explorer was "owned by L.C.'s mother." (L.C. was a neighborhood friend known to most of the witnesses who testified. An investigator testified that he was able to corroborate that A.C. owned the Explorer.)

The defendants and their two passengers drove past the house on Alabo Street, circled back and returned to the house. R.R. watched as Kenneth Halley, who was sitting in the front passenger seat, jumped from the vehicle armed with an AK–47 and shot the victim once. R.R. yelled at the occupants of the Explorer to leave the neighborhood. As Mr. Halley got back into the Explorer, John Chambers, who was driving the Explorer, exited the vehicle and also shot the victim with an AK–47. R.R. called 911 and attempted to aid the victim; however, the victim died on the scene. When the police arrived, R.R. directed them to the victim's body and related the facts of the shooting to the officers. R.R. said the victim would probably have lived if he had not been shot a second time. R.R. identified a picture of Kenneth Halley as one of the shooters, pointing out Mr. Halley's eight gold teeth.

R.R.'s statement to police described John Chambers as a tall, thin, red male with a gold plate in his mouth. R.R. said Mr. Chambers lived in a black and white house on Deslonde Street. Finally, R.R. said he feared for his life if the police did not arrest John Chambers, Kenneth Halley, M.M. and Lloyd.

E.M. testified that he had lived in the Ninth Ward his entire life and knew both Kenneth Halley and John Chambers. At the time of the shooting, E.M. lived on Reyes Street and considered the victim a neighborhood friend. E.M. recounted that on April 5, 2005, at about 10:00 a.m., he, the victim and R.R. were seated on a porch in the 2300 block of Alabo Street. About forty–five minutes later, a two-door, blue Explorer stopped in the street in front of where they were seated. Kenneth Halley stepped out of the car and shot the victim once with a rifle. Everyone ran. Mr. Halley got back in the Explorer, which then moved forward a bit and stopped. As E.M. was walking back to the scene, he heard a second shot and observed Mr. Chambers running back to the Explorer. Mr. Chambers had shot the victim with the same rifle Mr. Halley had used. Immediately afterwards, E.M.'s father drove him to the Fifth District Police Station to give a statement. E.M. identified Mr. Halley and Mr. Chambers as the men who had shot and killed the victim.

A.M. was then called to testify. He testified that he, the defendants (both Mr. Chambers and Mr. Halley) and the victim were childhood friends from the Ninth Ward. One day, in 2005, he was on the medical tier of Orleans Parish Prison at the same time as Mr. Chambers. At that time, Mr. Chambers told A.M. he was in prison for the shooting death of Joseph Lucien. Mr. Chambers told A.M. that the victim had gotten into a fight with "Lloyd," one of the defendants' friends. Shortly after the fight, both Mr. Halley and Mr. Chambers drove through the neighborhood looking for the victim. When the defendants spotted the victim

sitting on a porch on Deslonde Street, they jumped from the car, a Ford Explorer, and took turns shooting at the victim with an AK–47. Mr. Chambers told A.M. that the victim had started the fight. A.M. further testified that in 2011, he had sent a letter to NOPD revealing to them what Mr. Chambers had told him back in 2005. His letter was introduced into evidence.

A.M. denied having seen any news reports about the shooting, saying the only information he had received had come directly from Mr. Chambers. Although A.M. had also seen Mr. Halley in prison at the time he spoke with Mr. Chambers, A.M. said Mr. Halley did not mention the shooting. A.M. identified both defendants at trial.

Pursuant to further questioning, A.M. identified M.M. as his foster brother, who also grew up with the defendants. A.M. testified that he also knew L.C.

On cross-examination, A.M. testified he was neither promised nor did he expect to receive any consideration from the federal government or the state for his testimony in this case, or any other case. Defense counsel questioned A.M. about the letter A.M. had written to the NOPD regarding this case in which A.M. had claimed "[he and his boys] would go all out, and f--- the city up." A.M. explained he had not actually written the letter but had another inmate write it because that inmate was more educated than he. Further, A.M. said those words were the inmate's and not his own, and that the inmate was referring to his own knowledge of crimes that had occurred in the Magnolia Housing Development. A.M. claimed the inmate told him if he had anything to put in the letter about other crimes, he better do so because if A.M. withheld information, the federal government would charge him with conspiracy.

In support of A.M.'s testimony, the state called Blake Arcurie, General Counsel Risk Manager with the Orleans Parish Sheriff's Office, who testified he kept all inmate records for the Sheriff's Office. He had reviewed the lock up records of Mr. Halley, Mr. Chambers and A.M. for April and May of 2005. According to the inmate location inquiry Arcurie had run on those individuals, all three had been housed in Orleans Parish Prison during the same period.

First Assistant District Attorney Graymond Martin testified he reviewed the 2005 homicide of Joseph Lucien at the time it occurred. Martin noted that although Kenneth Halley and John Chambers were arrested for the homicide, the case was refused for prosecution at that time because the witnesses refused to testify. He added that in 2013, the case was reviewed once again, witnesses were located, evidence was re-examined, and ultimately, the case was presented to the Grand Jury, which returned an indictment. After the grand jury returned the indictment, the District Attorney's office received the letter from A.M.

A.M.'s chance encounter with a friend in prison that led to a casual conversation about what each was doing in prison, cannot, by any objective

standard, be considered testimonial. His statement was not made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *See Crawford*, *supra*, 541 U.S. at 51–52, 124 S.Ct. at 1364. Thus, the assignment of error is without merit.

We further note that confrontation errors are subject to a *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *State v. Williams*, 2002–1406 (La. 4/9/03), 844 So.2d 832; *State v. Henderson*, 2013–0526 (La.App. 4 Cir. 2/19/14), 136 So.3d 223.

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

The jurisprudence provides that a verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is unattributable to the error. *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). There is more than sufficient evidence in this record, disregarding the statement of Mr. Chambers, to establish Mr. Halley's guilt beyond a reasonable doubt. Two witnesses who knew both defendants and the victim were eyewitnesses to the shooting. Mr. Chambers' statement, offered through the testimony of A.M., was merely cumulative. Thus, if Mr. Halley had preserved this issue for our review, and even if the statement were testimonial, we would find the error harmless.[46]

Halley sought review of the Fourth Circuit's decision, and the Louisiana Supreme Court denied

writs without reasons.[47]

---

[46] *Halley*, 212 So. 3d at 599-603 (footnote omitted); St. R. Vol. 4 of 7, Louisiana Fourth Circuit Court of Appeal Opinion, 2016-KA-0713, at 3-11 (footnote omitted), February 8, 2017
[47] *Halley*, 280 So. 3d at 143; St. R. Vol. 6 of 7, La. Sup. Ct. Order, 2019-KH-0306, 10/8/19.

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."[48]  This right ensures reliability of the evidence by requiring statements under oath, submission to cross-examination, and the opportunity for the jury to assess witness credibility.[49]  The Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when the statements of a non-testifying codefendant naming the defendant as a participant in the crime are introduced at their joint trial.[50]  Such statements are inadmissible even if the jury is instructed to consider them only against the codefendant who made the statements.[51]

However, the Confrontation Clause does not prohibit the admissibility of nontestimonial statements.[52]  Instead, it applies only to "'witnesses' against the accused ... those who 'bear testimony[,]'"[53], and only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."[54]  "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."[55]

While the Supreme Court did not specifically define testimonial or nontestimonial, it did make clear that the Confrontation Clause was concerned with "testimony."  Testimony "is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact," and the Court noted that "[a]n accuser who makes a formal statement to government

---

[48] U.S. Const. amend. VI.

[49] *California v. Green*, 399 U.S. 149, 158 (1970).

[50] *Bruton v. United States*, 391 U.S. 123, 125-26 (1968).

[51] *Id*. at 137.

[52] *Davis v. Washington*, 547 U.S. 813, 821 (2006); *United States v. George*, Crim. Action No. 17-201, 2019 WL 4194526, at *4-6 (E.D. La. Sep. 9, 2019) (nontestimonial statement did not run afoul of *Bruton*).

[53] *Crawford v. Washington*, 541 U.S. 36, 51 (2004).

[54] *Davis*, 547 U.S. at 821.

[55] *Id*.

officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."[56]  "[W]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[57]  A statement is testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[58]  "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers."[59]

A Confrontation Clause claim presents a mixed question of law and fact.[60]  Therefore, this court must defer to the state courts' decision rejecting the claim unless petitioner demonstrates that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[61]

Here, there simply was no violation.  Adrian McDaniel testified that he, John Chambers and Kenneth Halley were childhood friends and grew up together.[62]  McDaniel recalled that he saw Chambers in April or May 2005.[63]  Both McDaniel and Chambers were waiting in the medical tier holding cell of the Orleans Parish Prison.[64]  McDaniel asked Chambers why he was locked up, and Chambers told him that he and Halley had killed Joe Lucien.[65]  McDaniel knew Lucien from school.[66]

---

[56] *Crawford*, 541 U.S. at 51.

[57] *Id.* at 68.

[58] *Davis,* 547 U.S. at 822.

[59] *Ohio v. Clark*, 576 U.S. 247, 249 (2015).

[60] *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008).

[61] 28 U.S.C. § 2254(d)(1).

[62] St. R. Vol. 4 of 7, Trial Tr., at 36-37, 51-52, 12/9/15.

[63] *Id.*, at 41, 56.

[64] *Id.*, at 41, 43, 53-54.

[65] *Id.*, at 39-40, 73.

[66] *Id.*, at 39.

It is clear that Chambers' casual conversation with McDaniel during a chance encounter in a medical unit holding cell was nontestimonial. Chambers' statement was made to a longtime friend. He made the statement shortly after the crime while both he and McDaniel were incarcerated and while they were both awaiting medical treatment. There is no evidence that Chambers believed that McDaniel would report his statement to law enforcement. There is no indication that the purpose of the conversation, let alone the primary purpose, was "to establish or prove past events potentially relevant to later criminal prosecution."[67] Consequently, the admission of the statement did not violate Halley's right to confrontation.[68]

For these reasons, the state courts' denial of relief was neither contrary to nor an unreasonable application of Supreme Court precedent. Halley is not entitled to relief on this issue.

## B. Claim Two: Effective Assistance of Counsel

Halley alleges that he was denied effective assistance of counsel. He specifically claims that his trial counsel was ineffective in failing to object to (1) admission of the audio and written transcript of Ryan Rogers' statement to police; (2) hearsay testimony by McDaniel; (3) the trial judge entering the jury room on two different occasions during deliberations; and (4) the trial judge threatening witnesses in chambers.

Halley raised these claims in his application for post-conviction relief.[69] The state trial court denied the claims and found that the proper foundation had been laid to admit Roger's

---

[67] *Davis*, 547 U.S. at 822.

[68] *United States v. Vasquez*, 766 F.3d 373, 378 (5th Cir. 2014) (co-defendant's jailhouse confession naming Vasquez as a participant in a crime to an inmate was non-testimonial and did not violate *Bruton*); *United States v. Berrios*, 676 F.3d 118, 127-28 (3d Cir. 2012) (surreptitiously recorded casual prison yard conversation between inmates was not "testimonial" for purposes of the Confrontation Clause); *United States v. Dale*, 614 F.3d 942, 955–56 (8th Cir. 2010) (holding that defendant's statements to prisoner were not testimonial and therefore did not violate co-defendant's Confrontation Clause rights).

[69] St. R. Vol. 1 of 7, Application for Post-Conviction Relief, 8/7/18 (dated 8/1/18).

statement into evidence after he claimed to not remember any details of the crime.[70]  Further, it found that, had defense counsel objected to the admission, it would have overruled the objection and that the issue would have been affirmed on appeal.[71]  With regard to defense counsel's failure to object to the admission of Chambers' statement to McDaniel, the trial court found that the admissibility of the statement was addressed on direct appeal, and, again, the trial court would have overruled any objection on Confrontation Clause or hearsay grounds.[72]  The trial court found Halley's claim that his counsel was ineffective for failing to object when it spoke to the jurors outside the presence of counsel meritless as "the application utterly fails to show how counsel's decision not to object to this was unreasonable or caused him prejudice."[73]  The trial court found that it was "inconceivable" why defense counsel would have objected when it instructed witnesses not to refer to a pending manslaughter case against Chambers and Halley.[74]  Further, because the trial court so instructed the witnesses in order to ensure that evidence of "other crimes" would not be presented to the jury, Halley had not shown prejudice as a result of the failure to object.[75]

The Louisiana Supreme Court denied Halley's related writ application based on his failure to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*.[76]

---

[70] St. R. Vol. 1 of 7, Judgment, at 2, 11/16/18.
[71] *Id.* (citing *State v. Juniors*, 915 So. 2d 291 (La. 2005)).
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Halley*, 280 So. 3d at 143; St. R. Vol. 6 of 7, La. Sup. Ct. Order, 2019-KH-0306, 10/8/19.

The issue of ineffective assistance of counsel is a mixed question of law and fact.[77]  Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

The Supreme Court in *Strickland* established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[78]  In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.[79]

The first prong requires that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[80]  On habeas review, the United States Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[81]  "Even under de novo review, the standard for judging counsel's representation is a most deferential one."[82]  The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[83]  Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.[84]  "It is all too tempting to second-

---

[77] *Strickland v. Washington*, 466 U.S. 688, 698 (1984); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

[78] 466 U.S. at 697

[79] *Kimler*, 167 F.3d at 893.

[80] *Id.* at 687-88.

[81] *Harrington*, 562 U.S. at 105.

[82] *Id.*

[83] *Strickland*, 466 U.S. at 690.

[84] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

guess counsel's assistance after conviction or adverse sentence."[85]   In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.[86]   Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance.[87]

Under the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[88]   A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[89]

### 1.     Failure to Object to Admission of Roger's Statement

Halley first alleges that his counsel was ineffective in failing to object to the admission of audio recording and written transcript of Ryan Rogers' statement to police given on the day of the murder.  He claims that admitting this evidence after Rogers claimed he could not recall the details of the murder violated his right to confrontation.

---

[85] *Harrington*, 562 U.S. at 105.

[86] *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

[87] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999), *cert. denied*, 528 U.S. 1013 (1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997); *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

[88] *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[89] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

At trial, Ryan Rogers testified that he was friends with the victim, Joseph Lucien, and that he knew Halley from school.[90]  He claimed that he did not remember April 5, 2005.[91]  Rogers testified that he was in front of his grandmother's house on Alabo Street when Lucien was shot.[92] He claimed he did not remember where he was located when Lucien was shot or whether he spoke to Lucien prior to the shooting.[93]  He admitted that he remembered going to the police station after the murder.[94]  The prosecutor questioned Rogers extensively about his statement he gave to police on the day of the shooting; however, Rogers claimed that he did not recall telling the police the specific information.[95]  Even after being shown a supplemental police report, Rogers claimed he did not recall identifying Chambers as one of the perpetrators of Lucien's murder or any information about the perpetrators' vehicle or telling the police that he was scared that he might die if the police did not arrest Chambers, Halley, and two other men in the vehicle.[96]

Thereafter, the trial court allowed the prosecution to admit into evidence exhibits 36 and 37, which consisted of the audio recording and written transcript of Rogers' statement to police on April 5, 2015.[97]  The trial court found that the appropriate predicate had been laid for admission of the evidence and, significantly, noted defense's objection.[98]  The audio of Rogers' statement was played for the jury.[99]  On cross-examination by Halley's counsel, Rogers claimed that he did not recall going to the police station with his brother, he did not recall giving a statement to police,

---

[90] St. R. Vol. 3 of 7, Trial Tr., at 107-08, 12/8/15.
[91] *Id.* at 108.
[92] *Id.* at 108-09
[93] *Id.* at 110-11.
[94] *Id*. at 121-22.
[95] *Id.* at 112-16, 118-19, 121-23.
[96] *Id.* at 121-23.
[97] *Id.* at 124-25.
[98] *Id.* at 124.
[99] *Id.* at 125.

and that the voice on the audio was not his voice.[100]  On re-direct, Rogers admitted that his social security number and date of birth were heard on the audio.[101]

Initially, the record shows that Halley's counsel in fact objected to the use of Roger's statement to police.[102]  The trial court held a sidebar, and apparently overruled the objection.[103] Because the sidebar was not transcribed, the basis for Halley's counsel's objection cannot be discerned.  Nonetheless, when the trial court allowed the audio recording and written transcript of Roger's statement to police to be published to the jury, it specifically noted the defense's objections.[104] Halley's counsel is not ineffective simply because his objection was unsuccessful.[105]

Further, contrary to Halley's claim, the Confrontation Clause does not prohibit the introduction of a witness' out-of-court statement if the witness suffers from, or purports to suffer from, memory loss at the time of trial.  The Supreme Court, in noting its past struggle with the interplay of the Confrontation Clause's protection and a testifying witness' purported memory loss, observed:

> The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  This has long been read as securing an adequate opportunity to cross-examine adverse witnesses.  *See, e.g.*, *Mattox v. United States*, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895); *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965).  This Court has never held that a Confrontation Clause violation can be founded upon a witness' loss of memory, but in two cases has expressly left that possibility open.
>
> In *California v. Green*, 399 U.S. 149, 157-164, 90 S.Ct. 1930, 1934-38, 26 L.Ed.2d 489 (1970), we found no constitutional violation in the admission of testimony that had been given at a preliminary hearing, relying on (as one of two independent grounds) the proposition that the opportunity to cross-examine the

---

[100] *Id.* at 126-27.

[101] *Id.* at 127-28.

[102] *Id.* at 112-113.

[103] *Id.* at 113.

[104] *Id.* at 124.

[105] *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

witness at trial satisfied the Sixth Amendment's requirements. We declined, however, to decide the admissibility of the same witness' out-of-court statement to a police officer concerning events that at trial he was unable to recall. In remanding on this point, we noted that the state court had not considered, and the parties had not briefed, the possibility that the witness' memory loss so affected the petitioner's right to cross-examine as to violate the Confrontation Clause. *Id.*, at 168-169, 90 S.Ct., at 1940-41. Justice Harlan, in a scholarly concurrence, stated that he would have reached the issue of the out-of-court statement, and would have held that a witness' inability to "recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence." *Id.*, at 188, 90 S.Ct., at 1951.

In *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam), we determined that there was no Confrontation Clause violation when an expert witness testified as to what opinion he had formed, but could not recollect the basis on which he had formed it. We said:

> "The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Id.*, at 21–22, 106 S.Ct., at 295.

Our opinion noted that a defendant seeking to discredit a forgetful expert witness is not without ammunition, since the jury may be persuaded that "his opinion is as unreliable as his memory." *Id.*, at 19, 106 S.Ct., at 294. We distinguished, however, the unresolved issue in *Green* on the basis that that involved the introduction of an out-of-court statement. 474 U.S., at 18, 106 S.Ct., at 294. Justice STEVENS, concurring in the judgment, suggested that the question at hand was in fact quite close to the question left open in *Green*. 474 U.S., at 23-24, 106 S.Ct., at 296.[106]

However, the Supreme Court later resolved the issue:

> Here that question is squarely presented, and we agree with the answer suggested 18 years ago by Justice Harlan. "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987), quoting *Fensterer*, *supra*, 474 U.S., at 20, 106 S.Ct., at 294 (emphasis

---

[106] *Owens*, 484 U.S. at 557-59 (footnote omitted).

added); *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); Ohio v. Roberts, 448 U.S. 56, 73, n. 12, 100 S.Ct. 2531, 2543, n. 12, 65 L.Ed.2d 597 (1980) .... It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and *even (what is often a prime objective of cross-examination, see 3A J. Wigmore, Evidence § 995, pp. 931-932 (J. Chadbourn rev. 1970)) the very fact that he has a bad memory.* ... The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee. They are, however, realistic weapons....[107]

Accordingly, under Supreme Court precedent, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."[108] Louisiana courts have similarly rejected the argument that the admission of a statement to police by a witness who feigns memory loss at trial violates the right of confrontation where the defendant was afforded an adequate opportunity to cross-examine the witness.[109]

As neither Louisiana law nor the federal Confrontation Clause prohibit the introduction of a witness' out-of-court statement simply because the witness suffers from or feigns memory loss, defense counsel did not act deficiently if he, in fact, failed to object on that basis.[110] Nor has Halley shown prejudice as a result of any failure to object on that basis. The denial of relief on these issues was not contrary to or an unreasonable application of *Strickland*. Halley is not entitled to relief as to this claim.

---

[107] *Id.* at 559-60 (emphasis added).

[108] *Crawford*, 541 U.S. at 59 n.9.

[109] *State v. Davis*, 128 So. 3d 1162, 1166-69 (La. App. 5th Cir. 2013).

[110] *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").

## 2.    Failure to Object to Chambers' Statement to McDaniel

Halley next claims that his counsel was ineffective in failing to object to McDaniel's testimony regarding his conversation with Chambers about the murder.  He claims that his counsel should have objected on the bases of hearsay and violation of his right to confrontation.

At trial, neither defense counsel objected on the basis of hearsay to McDaniel's testimony regarding Chambers' statement to him.[111]  "'Hearsay'" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.[112]  An out-of-court statement of the accused is admissible as an exception to the hearsay rule when it is an admission against interest under La. Code Evid. art. 804(B)(3).  A statement against penal interest is one that, at the time of its making, was so far contrary to the declarant's pecuniary interest, or so far tended to subject him to criminal liability, that a reasonable man in his position would not have made the statement unless he believed it to be true.[113]  For such a statement to be admissible, there must be corroborating circumstances that clearly indicate the statement's trustworthiness.[114]  "The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all the surrounding circumstances."[115]

Because article 804 (B)(3) of Louisiana's Code of Evidence closely parallels Federal Rule of Evidence 804(b)(3), Louisiana courts have relied on federal jurisprudence in determining the

---

[111]  After McDaniel stated he "heard what happened" in response to a question, the trial court held an off-the-record bench conference.  St. R. Vol. 4 of 7, Trial Tr., at 37, 12/9/15.  Thereafter, the trial court advised McDaniel not to testify about anything he heard from someone else.  *Id.*

[112]  La. Code Evid. art. 801(C).

[113]  *Id.*

[114]  *Id.*

[115]  *Williamson v. United States*, 512 U.S. 594, 603–04 (1994) (quoting Fed. R. Evid. 804(b)(3)).

admissibility of a statement against pecuniary interest.[116]   "When made in a noninvestigatory context, where the setting indicates no motive to speak falsely, statements against penal interest and confessions to personal acquaintances or family members suggest reliability, even when adversely implicating others."[117]   A statement has the "particularized guarantees of trustworthiness" where: (1) the declarant implicates himself as much as his co-defendant in a crime; (2) the declarant had no self-interested motive to confess to the crime, "other than perhaps to brag about his criminal past to increase his clout in prison;" (3) the declarant was not coerced into confessing; and (4) when the declarant was not attempting to curry favor with law enforcement.[118]

The record shows that, on April 17, 2015, at a pretrial conference, the State filed a notice of its intention to use a statement made to a "known witness" at the Orleans Parish Jail.[119]   At a pretrial conference on May 6, 2015, the trial court took the testimony of Adrian McDaniel, and he was cross-examined.[120]   Certainly, Chambers' statement to McDaniel was self-inculpatory such that it could be considered a statement against penal interest.   Chambers clearly implicated himself in Lucien's murder.   While he also implicated Halley, Chambers did attempt to make Halley appear

---

[116] *State v. Kimble*, 688 So. 2d 552, 556 (La. 2d Cir. 1996 (citation omitted).

[117] *Id.* (citing *United States v. Flores*, 985 F.2d 770 (5th Cir. 1993)).

[118] *United States v. Taylor*, 802 F. App'x 604, 608 (2d Cir. 2020) (co-defendant's statements to cellmate implicating himself and Taylor were admissible at joint trial pursuant to Rule 804(b)(3)); *State v. Raine*, 238 So. 3d 1076, 1086 (La. App. 4th Cir. 2018) (declarant's statements to family members and cellmate that he had been paid by defendant to kill the victim were properly admitted as nontestimonial statements against interest pursuant to art. 804(B)(3)).

[119] St. R. Vol. 1 of 7, Min. Entry, 4/17/15; St. R. Vol. 2 of 7, at 95, Notice of Intention to Use Confession or Statement Pursuant to Code of Criminal Procedure Article 768, 4/17/15.

[120] St. R. Vol. 1 of 7, Min. Entry, 5/6/15.   The record does not include a transcript of the hearing.   The minute entry indicates that Chambers' counsel objected to the testimony not being recorded.   Given the timing of the hearing, presumably, the purpose of the taking McDaniel's testimony was to determine whether Chambers' statement to him was trustworthy in order for McDaniel's testimony to be admissible at trial.

more culpable. He told McDaniel that, after Halley shot Lucien and Lucien ran, Chambers took the AK-47, stood over Lucien, and shot him in the chest.[121]

Further, corroborating circumstances exist indicating the trustworthiness of the statement. Chambers' statement is not suspect. He had no self-interested motive to confess to the murder, nor was he coerced into confessing. Rather, during a casual conversation in a jail medical holding cell, Chambers responded to McDaniel's inquiry as to why he was in jail, and told McDaniel how he and Halley murdered Lucien. He had no motive to lie to McDaniel. Chambers was not attempting to curry favor with law enforcement. Further, the most incriminating portions of Chambers' statement, which explained how Halley first shot Lucien and then Chambers shot him a second time, were corroborated by the statements of two eyewitnesses (Rogers and Mackey) to Lucien's murder.

As Chambers' statement to McDaniel was nontestimonial, as discussed in section IV.A., and, further, was a statement against interest under La. Code Evid. art. 804(B)(3), McDaniel's testimony regarding the statement was admissible. As such, Halley has not shown that his counsel was ineffective for failing to object on either basis or any resulting prejudice.

Halley also claims that his counsel was ineffective in failing to object to McDaniel's testimony relating to a letter he sent to the New Orleans Police Department providing the information about Lucien's murder. Halley claims that the letter was by another prisoner, and, as a result, McDaniel's testimony about the letter constituted hearsay within hearsay.

Hearsay within hearsay is admissible if each part of the combined statement conforms with an exception to the hearsay rule.[122] McDaniel initially testified that he wrote a letter to the New

---

[121] St. R. Vol. 4 of 7, Trial Tr., at 40, 12/9/15.
[122] La. Code Evid. art. 805.

Orleans Police Department advising it that he had information about the murder of Lucien.[123]  On cross-examination, counsel for Chambers questioned McDaniel about a statement in the letter that McDaniel and his friends "were going to go all out at f--- the city up."[124]  In response, McDaniel testified that a fellow inmate, Quincy Walker, wrote the letter for him.[125]  McDaniel explained that the particular statement meant that he had information about other crimes and planned to cooperate to bring other criminals to justice.[126]  McDaniel further explained that Walker counseled him and advised him to come forward with any information he had regarding other crimes.[127]  McDaniel testified that he chose to testify because he wanted to "clear his conscience" and wanted to "change [his] life and do something positive."[128]

Counsel for Halley briefly questioned McDaniel about his letter.[129]  In response, McDaniel admitted that he wrote that he had witnessed several murders, but clarified that he obviously had not witnessed Lucien's murder, but he had testified in federal court about another murder for which he was present.[130]  McDaniel admitted that he hoped that he would get a reduction in sentence for his cooperation.[131]  On re-direct, McDaniel testified that he had already been sentenced in his case when he wrote the letter.[132]

Contrary to Halley's claim, there is no evidence that McDaniel's testimony regarding his conversation with Chambers in the medical holding cell in 2005 was prepared by Walker.  While,

---

[123] St. R. Vol. 4 of 7, Trial Tr., at 37-38, 12/9/15.
[124] *Id.* at 48-50.
[125] *Id.* at 49.
[126] *Id.* at 50.
[127] *Id.* at 50-51.
[128] *Id.* at 66-67.
[129] *Id.* at 69-70.
[130] *Id.* at 70.
[131] *Id.* at 79-80.
[132] *Id.* at 82.

according to McDaniel, the letter advising the police that McDaniel had information about Lucien's murder and other crimes was written by Walker, they prepared the letter together.[133]  The prosecution questioned McDaniel about the letter simply to explain how McDaniel came to testify at the trial.  Both defense counsel utilized the letter in an attempt to impeach McDaniel's credibility.  To the extent that any portion of McDaniel's testimony specifically referring to a statement in the letter by Walker that McDaniel did not adopt as his own could be considered hearsay within hearsay, Halley has failed to demonstrate any prejudice as a result of either his counsel's elicitation of the hearsay testimony or his failure to object.

The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.  Halley is not entitled to relief on this issue.

### 3.    Failure to Object to Trial Judge Speaking to Jurors

Halley next claims that his counsel was ineffective in failing to object when the trial judge entered the jury room twice during deliberations.

Approximately ninety minutes into deliberations, the jury sent a communication to the trial court.[134]  The trial court, in open court and in Halley's presence, advised of the communication. The trial court stated:

The question is: Testimony of Mackie, 911 call, Rogers' 4/5/05 statement audio.

So if it is all right with you-all, I'm going to inform them they can't have the audio of the testimony of Mr. Mackie, obviously and these audios, I will allow those to be played in the jury room.  I will have them set up.  Is that Okay?[135]

---

[133] *Id.* at 49.
[134] St R. Vol. 1 of 4, Min. Entry, at 2, 12/9/15.
[135] St. R. Vol. 4 of 7, Trial Tr., at 188, 12/9/15.

Counsel for Halley responded, "[t]hat is fine."[136]  When Chambers' counsel asked, "[a]re you going to pull them out or are you just going to go--," the trial court advised that it was "just going to go in there."[137]  Neither defense counsel objected.[138]  The record reflects that the trial judge entered and exited the jury room after which the jury continued to deliberate.[139]

Approximately, forty-five minutes later, the jury had another question.[140]  The trial court, again in open court, twice read the following question into the record:  "If ten people agree on a verdict can two people simply disagree by being undecided rather than the two people having a different verdict?"[141]  The trial court advised that it planned to tell the jury that ten jurors must agree to a verdict.[142]  Halley's counsel responded, "Exactly.  If you read the law to them, that is all you can say."[143]  The trial court asked if there were any objections to it going into the jury room to advise the jury that ten of the jurors had to agree to have a legal verdict and no counsel voiced an objection.[144]  The record reflects that the judge entered and exited the jury room.[145]  One hour later, the jury returned with its verdict.[146]

Article 791(a) of the Louisiana Code of Criminal Procedure provides that "[a] jury is sequestered by being kept together in the charge of an officer of the court so as to be secluded from outside communication, except as permitted by R.S. 18:1307.2."  La. Code Crim. Proc. art. 831(5) provides that a defendant shall be present at all proceedings when the jury is present.  Further, La.

---

[136] *Id.* at 189.
[137] *Id.*
[138] *Id.*
[139] *Id.*
[140] St Rec. Vol. 1 of 7, Min. Entry, at 2, 12/9/15.
[141] St. R. Vol. 4 of 7, Trial Tr., at 189-90, 12/9/15.
[142] *Id.* at 190.
[143] *Id.*
[144] *Id.* at 191.
[145] *Id.*
[146] St Rec. Vol. 1 of 4, Min. Entry, at 2, 12/9/15.

Code Crim. Proc. art 808 provides that if the jury requires further charges, it shall be brought into the courtroom and the trial court shall further charge the jury in the presence of the defendant, his counsel, and the prosecutor.

"The rule of sequestration does not 'bar communication between the judge and jury when such communication is within the bounds of trial related necessity.'"[147]   A trial court's contact with the jury is not prejudicial when its response to the juror is no different than had the juror made the request in open court and the judge discloses the event to counsel.[148]

Despite the trial judge's decision to twice instruct the jury inside the jury room after consultation with all counsel, Halley has not shown any prejudice resulting from his counsel's failure to object.  The trial judge specifically advised counsel of what she intended to instruct the jury on both occasions.  The instructions were in accordance with the law at the time of trial.  There is no evidence that the trial judge's instructions in the jury room were any different than that agreed upon by counsel in the courtroom.  Halley has provided no evidence of any attempt on the part of the trial judge to influence the jury.  The trial judge's first communication with the jury simply involved advising it that it could not have the audio of a witness' trial testimony but could listen to other audio evidence.  It is clear from the jury's second note that ten jurors had reached a verdict on the charges prior to the trial judge entering the jury room for a second time.  The jury's question was whether its 10-2 verdict was legally permissible if the two votes were undecided ones rather than different from the other ten votes.  The trial judge advised counsel that she intended to instruct the jury that ten jurors must agree to a verdict, which was a correct statement of law at the time of trial.

---

[147] *State v. Allen*, 682 So. 2d 713, 727 (La. 1996) (citation omitted).
[148] *State v. Gatti*, 914 So. 2d 74, 92 (La. App. 2d Cir. 2005); *State v. Williams*, 738 So. 2d 640, 650-51  (La. App. 5th Cir. 1999) (no prejudice where trial judge entered jury room to instruct jurors that they must rely on their memories of the trial testimony).

Halley has not shown a reasonable probability that the outcome of the trial would have been different had his counsel objected.  The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.  He is not entitled to relief as to this claim.[149]

### 4.  Failure to Object to Trial Judge Threatening Witnesses

Halley claims his counsel was ineffective in failing to object when the trial judge threatened state witnesses Eugene Mackey and Ryan Rogers in chambers before each testified.  He claims that the trial judge's conduct indicated a bias against Halley and prevented these two witnesses from testifying truthfully.

On three occasions, the trial judge warned witnesses not to refer to a separate pending manslaughter case against Halley and Chambers.  First, prior to Rogers testifying and at the request of counsel, the trial court convened in chambers in the presence of counsel, Rogers, and Rogers' counsel.[150]  The trial judge admonished Rogers not to make any reference to a pending manslaughter case against Halley and Chambers.[151]  The trial judge warned Rogers that if he made any mention of the death of Officer Thomas by hit and run, she would hold him in contempt of court and he would be imprisoned for six months.[152]  The trial court specifically stated:

> I'm advising you, Mr. Rogers, not to make any reference to the pending Manslaughter Trial against Kenneth Halley or John Chambers.

---

[149] *Stanfield v. Reynolds*, Civ. Action No. 2:16-cv-01066-CMC-MGB, 2016 WL 11190486, at *8 (D.S.C. Dec. 6, 2016) (finding petitioner failed to show prejudice where the trial judge entered the jury room to instruct the jury to select a foreperson), *R.& R. adopted*, 2017 WL 10431 (D.S.C. Jan. 11, 2017); *Hebert v. Smith*, No. 1:09–cv–00324–BLW, 2012 WL 4522373, at *19 (D. Idaho Sept. 29, 2012) (petitioner failed to show prejudice where his counsel failed to object to the trial judge entering the jury room twice to admonish the jury not to discuss the case); *Pope v. Mahon*, Civ. Action No. 3:10cv24, 2010 WL 5186760, at *4 (E.D. Va. Dec. 10, 2010) (petitioner failed to show that the result of the proceeding would have been different where his counsel did not object to trial judge's entry into jury room during sentencing deliberations to respond to jury's note).

[150] St Rec. Vol. 3 of 7, Trial Tr., at 101-04, 12/8/15.

[151] *Id.* at 102.

[152] *Id.* at 102-03.

> So don't make any reference to a police officer shooting, or this murder investigation, or their arrest in this case being retaliatory in nature, because of the allegations of them being involved in a police officer shooting. That case is separate and apart from this one.[153]

After Rogers affirmed that he understood, the trial court stated:

> And do you also understand, just to be clear, how important it is that you don't make reference to that. You've discussed this with your attorney. If you mention, in any way, shape or form, this cop killing in this case, in front of this jury, I'm going to hold you in Contempt of Court, and you will be placed in jail for six months, without benefits of probation, parole or suspension of sentence. That's how important it is.[154]

The prosecution clarified that the police officer had been killed in a hit and run.[155] The trial court then confirmed that Rogers understood that the case he was not to refer to involved the hit and run of Officer Thomas.[156]

Rogers thereafter testified, but feigned memory loss.[157] While he recalled going to the police station after the murder, and initially testified that he was not promised anything for making a statement to police, he claimed on cross-examination that he did not recall making a statement to police.[158] It is clear that from the evidence that Rogers, who was arrested pursuant to a material witness warrant,[159] feared testifying against Halley and Chambers.

Prior to Eugene Mackey testifying, trial court convened in chambers in the presence of counsel and Mackey.[160] The trial court advised Mackey as follows:

> Mr. Mackey, I just want to talk to you about one particular issue. Mr. Halley and Mr. Chambers are on trial for a Second Degree Murder that took place from April of 2005.

---

[153] *Id.* at 102.
[154] *Id.*
[155] *Id.* at 103.
[156] *Id.*
[157] *Id.* at 106-28.
[158] *Id.* at 122, 126-27.
[159] *Id.* at 11-13.
[160] *Id.* at 129-30.

> There's also another pending Manslaughter charge against both of those
> defendants. I'm telling you now, do not make any reference to this pending police
> officer Manslaughter. He was hit by a car, and died. Okay?[161]

The trial court further stated, "If you mention it in any way in front of this jury, I'm going to hold

you in Contempt of Court. Do you understand that?"[162] After Mackey affirmed that he understood

the trial court's admonition, the trial court stated, "Just stick to the questions that are posed by the

prosecution and by the Defense, okay?"[163] Mackey responded in the affirmative and left

chambers.[164]

Thereafter, and *not* in Mackey's presence, counsel for Halley asked whether they could

determine if Mackey had counsel.[165] The trial court initially responded that Mackey did not "really

have any Fifth Amendment rights."[166] Defense counsel stated that he wanted to confirm whether

Mackey had an open case.[167] The trial court had Mackey return to chambers and confirmed that

he did not have counsel.[168] The trial court advised Mackey that it would have someone from the

Public Defender's Office stand in while Mackey testified.[169] Mackey then testified that he was

present when Halley and Chambers shot Lucien.[170] He recalled giving a statement to police the

night of the murder.[171]

---

[161] *Id.* at 129.
[162] *Id.* at 130.
[163] *Id.*
[164] *Id.* at 130.
[165] *Id.* at 131.
[166] *Id.*
[167] *Id.*
[168] *Id.* at 131-32.
[169] *Id.* at 132.
[170] *Id.* at 132-38.
[171] *Id.* at 138-40, 148.

The following day, prior to McDaniel testifying, the trial judge again met in chambers with counsel and advised McDaniel not to mention the other case.[172]  McDaniel advised that he was not aware of the manslaughter charges.[173]  As a result, the trial court did not warn him about contempt of court if he failed to follow the court's instructions.[174]

In support of his claim that his counsel was ineffective in failing to object to the trial court's admonitions to Rogers and Mackey, Halley relies on *Webb v. Texas*.[175]  In *Webb*, the Supreme Court has made clear that there is a point at which threats of a perjury charge against a defense witness can exert "such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify," thereby depriving the accused of his right to due process.[176]  However, the facts in *Webb* were particularly egregious, with the trial judge sua sponte issuing the following personal threat from the bench to the sole defense witness:

> Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you.  If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood (sic) is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on.  If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve.  It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble.  The court wants you to know that.  You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking.[177]

---

[172] St. R. Vol. 4 of 7, Trial Tr., at 32-33, 12/9/15.

[173] *Id.* at 33.

[174] Halley does not claim that his counsel was ineffective for failing to object when the trial court admonished McDaniel.

[175] 409 U.S. 95 (1972).

[176] *Id.* at 98.

[177] *Id.* at 95-96.

This case is completely distinguishable from *Webb*.  In *Webb*, the trial judge made it clear that he believed that the sole defense witness was going to lie if he took the stand and, in that event, the judge would "personally see" to it that the witness was indicted for perjury.  The facts here are quite different.  Neither witness was a defense witness.  The trial judge did not accuse any of the witnesses of intending to commit perjury.  Rather, in an attempt to ensure a fair trial and avoid a mistrial by disclosure to the jury of unrelated criminal proceedings against the defendants, the trial court admonished the witnesses not to refer to an inadmissible "other crime" with which the defendants were charged.[178]  To signify the importance of following the instruction, the trial court advised two of those witnesses of the penalty of contempt of court if they referred to the pending manslaughter case.  In doing so, the trial court did not attempt to deprive Halley of his right to present a defense.  Instead, the trial court was protecting Halley's right to a fair trial.

There is simply no evidence that the trial court's admonishment caused either witness to falsely testify.  While Rogers claimed that he could not recall the details of the murder, including the identity of the perpetrators, the prosecution established that Rogers was a hostile witness who had to be arrested to secure his presence in court and who feared retaliation if he testified against the defendants.  After Rogers repeatedly feigned memory loss, the prosecution offered the audio recording and written transcript of Rogers' statement to police from the night of the murder.  While it is true that Mackey testified against Halley by identifying him as one of the perpetrators of Lucien's murder, there is no evidence that his testimony was influenced by the trial court's admonishment.  Rather, Mackey's testimony was consistent with the statement he gave to police ten years earlier.

---

[178] *See* La. Code Crim. Proc. art 771(2) (providing that the trial court immediately admonish to the  jury to disregard a remark that is irrelevant or immaterial and might create prejudice against the defendant and to declare a mistrial if an admonition is not sufficient to assure a fair trial).

Halley has failed to establish any deficiency or prejudice arising from his counsel's failure to object to the trial court's admonishment of Rogers and Mackey. The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Kenneth Halley's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[179]

New Orleans, Louisiana, this ___16th___ day of December, 2021.



DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[179] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. ' 636(b)(1).